# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

XUE YUN ZHANG,

Petitioner,

v.

ALBERTO GONZALES, United States
Attorney General,*

Respondent.

No. 01-71623

Agency No.
A77-297-144

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 6, 2002—San Francisco, California

Submission withdrawn December 18, 2002**
Resubmitted May 19, 2005

Filed May 26, 2005

Before: Robert E. Cowen,*** Michael Daly Hawkins, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General for the United States, pursuant to Fed. R. App. P. 43(c)(2).

**On December 18, 2002, we withdrew this appeal from submission pending consideration of *Li v. Ashcroft*, 356 F.3d 1153 (9th Cir. 2004) (en banc).

***The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

**COUNSEL**

Peter K. Huston, Patricia Bonheyo (argued), Randall T. Kim, Elisa Lee, Latham & Watkins, San Francisco, California, for the petitioner.

Paul Fiorino, Richard M. Evans, Michael J. Dougherty, Nancy Friedman (argued), Office of Immigration Litigation, Department of Justice, Washington, D.C., for the respondent.

---

## OPINION

W. FLETCHER, Circuit Judge:

Xue Yun Zhang, a Chinese citizen, arrived in the United States seeking asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") dismissed the appeal. Ms. Zhang's petition for review presents a question of first impression in this court: is a child of a parent who was forcibly sterilized automatically eligible for asylum under 8 U.S.C. § 1101(a)(42)(B)? We hold that she is not.

To be eligible for asylum or withholding of removal, Ms. Zhang must demonstrate that she suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. The BIA determined that Ms. Zhang did not suffer persecution and that she does not have a well-founded fear of future persecution upon returning to China. We hold that the BIA's determination is not supported by substantial evidence. We therefore grant her petition for review and remand for further proceedings consistent with this opinion.

### I.   Background

Xue Yun Zhang was fourteen years old in April 2000 when she left China for the United States. Because neither the IJ nor the BIA[1] made a negative credibility finding, we accept Ms.

---

[1]As of March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist and most of its functions were transferred to the

Zhang's testimony before the IJ as true. *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 851 (9th Cir. 2004). We take the following facts from her testimony and asylum application.

Ms. Zhang is the oldest of three children in her family. She was born in Changla City, China on September 16, 1985. Two years later, Ms. Zhang's parents had a second girl. The government permitted two children per family in the rural village where the Zhang family lives, but Ms. Zhang's parents decided to have a third child. On January 8, 1992, Ms. Zhang's brother was born. The family successfully hid the third child from authorities for six years. His existence became known to officials in November 1999, when Ms. Zhang's parents decided to enroll their son in school. As required by law, Ms. Zhang's parents reported the boy's birth to local officials and placed his name in the family registry.

After learning that the Zhang family had more children than allowed, government officials ordered Mr. Zhang to be sterilized. On April 2, 2000, several officials from the local birth planning bureau came to the Zhang family home early in the morning. The officials took Mr. Zhang away by car to be sterilized. Describing this incident, Ms. Zhang testified, "My mother was crying, and our sisters and brothers were crying, and we did not want my father to be taken away to be forced to terminate his reproduc[tive] ability." After the operation, Ms. Zhang's father was physically weakened and he was unable to resume work in his previous occupations — housing construction and agriculture. To earn income, Ms. Zhang's mother began working as a babysitter for other families' children. Officials imposed a fine of 23,000 renminbi

Bureau of Border Security and the Bureau of Citizenship and Immigration Services. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. We refer to the BIA and the INS as the relevant agencies throughout this opinion because the events described herein took place before the transfer.

("RMB") — at the time, about $2,800 — on the Zhang family. The family could not pay the fine. Officials confiscated some of the family's possessions and threatened to evict the family from its home. The children were prohibited from attending further school until the fine was paid. Ms. Zhang was in seventh grade at the time.

According to Ms. Zhang's asylum application, "[i]n light of these problems, my father thought that there was no future for me in China so when he heard of an opportunity to send me here, he did so." Ms. Zhang's mother obtained a fraudulent passport and visa, and made arrangements to smuggle Ms. Zhang to the United States. On April 21, 2000, the Immigration and Naturalization Service ("INS") apprehended Ms. Zhang at Los Angeles International Airport, where she requested asylum and withholding of removal. She told the INS officer who took her sworn statement that she wanted "to learn English and work here." When asked why she left her home country, she answered, "I want to come to study and work." When asked if she was afraid to return to her country, she said that she was.

At Ms. Zhang's hearing before the IJ, her counsel argued that she was eligible for asylum and related relief on the theory that she had experienced persecution in China as the child of parents who had violated China's family planning policies. Her counsel also argued that Ms. Zhang had a well-founded fear of future persecution because she feared that she would be arrested, beaten, and tortured if returned to China.

The IJ denied Ms. Zhang's application for relief. The IJ recognized that individuals who have been forcibly sterilized, as well as their spouses, are deemed to be refugees and are therefore eligible for asylum. But he ruled that the children of forcibly sterilized parents are not automatically eligible for asylum. The IJ concluded that Ms. Zhang had not carried her burden of showing that she, herself, had been persecuted on account of her political opinion, nor her burden of showing

that she had a well-founded fear of future persecution. Ms. Zhang timely appealed to the BIA, which adopted the IJ's decision and dismissed the appeal. This petition for review followed. As of February 4, 2002, the INS was still holding Ms. Zhang in detention while her case was pending. We have since been informed by her counsel that she is no longer in detention.

Where, as here, the BIA reviews the IJ's opinion de novo, we review the BIA's decision and those portions of the IJ's decision adopted by the BIA. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). We review de novo the BIA's legal conclusions, granting deference to its reasonable interpretation of ambiguous statutory provisions. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999). We review findings of fact, including whether Ms. Zhang suffered persecution or has a well-founded fear of future persecution, for substantial evidence. *Guo v. Ashcroft*, 361 F.3d 1194, 1203 (9th Cir. 2004). "To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it[.]" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original).

## II.   Discussion

### A.   Automatic Statutory Eligibility for Asylum

**[1]** To be eligible for asylum, an applicant must show that she is a person who is "unable or unwilling" to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Under 8 U.S.C. § 1101(a)(42)(B), an individual who has been forcibly sterilized is automatically deemed eligible for asylum. In relevant part, § 1101(a)(42)(B) provides that

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has

been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

As we and the BIA have construed this provision, spouses of individuals who have been sterilized are also automatically deemed eligible for asylum. *Li v. Ashcroft*, 356 F.3d 1153, 1157 (9th Cir. 2004) (en banc); *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2002); *In re C-Y-Z-*, 21 I. & N. Dec. 915, 918 (BIA 1997).

[2] Ms. Zhang's counsel urges us to extend automatic asylum eligibility to the children of forcibly sterilized parents. The statute, however, does not plainly indicate that such children are deemed eligible. At most, the statute is ambiguous on this point, as its text states that "*a person* who has been forced to abort a pregnancy or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B) (emphasis added). The statute does not explicitly make eligible the child of someone who has been forcibly sterilized. When the text of the INA is ambiguous, we defer to the BIA's reasonable construction of the statute it administers. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Espejo v. INS*, 311 F.3d 976, 979 (9th Cir. 2002). The "BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication[.]' " *Aguirre-Aguirre*, 526 U.S. at 425 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987)).

We reject agency interpretations of the INA that "contravene other indications of congressional intent" or that "produce absurd results." *Ma*, 361 F.3d at 558 (quotation marks and citations omitted). For example, in *Ma*, the BIA ruled that the husband of a forcibly sterilized wife was not entitled to automatic asylum eligibility because the husband and wife were too young to officially register their marriage in China. *Id.* We reversed, holding that

> [t]he BIA's refusal to grant asylum to an individual who cannot register his marriage with the Chinese government on account of a law promulgated as part of its coercive population control policy, a policy deemed by Congress to be oppressive and persecutory, contravenes the statute and leads to absurd and wholly unacceptable results.

*Id.* at 559.

**[3]** In this case, the BIA held that it would not extend automatic statutory eligibility to "a person, such as [Ms. Zhang], who was not the spouse of the person forced to undergo such a procedure." We cannot conclude that the BIA's interpretation of the statute is unreasonable or absurd. A person is persecuted when his or her spouse is sterilized because the ability of that person to choose to have children with his or her spouse is limited. Thus, sterilization of one spouse necessarily persecutes the other. In contrast, sterilization of a parent does not *necessarily* persecute a child, though of course in particular circumstances, it might.

**[4]** The BIA's interpretation is not inconsistent with the relevant legislative history. China's population control policies are targeted at both partners in a couple; both members of a couple who defy population control policies may be subjected to forced sterilization or birth control. *See, e.g.*, *Ma*, 361 F.3d at 562 (granting asylum to a man whose wife was forcibly sterilized); *Li*, 356 F.3d at 1156, 1161 (granting asylum claim

of a young woman threatened with forcible sterilization, when her boyfriend was also so threatened); *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir. 2003) (granting asylum to a man whose wife was forcibly sterilized). We observed in *Ma* that Congress intended to grant asylum to Chinese " '*couples*' persecuted on account of an 'unauthorized' pregnancy, and to keep families together." 361 F.3d at 559 (emphasis added) (quoting H.R. REP. No. 104-469(I), at 174 (1996)). The legislative history of the forcible sterilization amendment does not indicate that Congress meant to define children of forcibly sterilized parents to be *per se* eligible for asylum. *See* H.R. REP. No. 104-469 (I), at 174.

**[5]** We recognize that we have previously suggested that children of forcibly sterilized parents might be automatically eligible for asylum. In *Jie Lin v. Ashcroft*, 377 F.3d 1014 (9th Cir. 2004), we proposed that the rationale of the BIA's decision in *C-Y-Z-* granting asylum to the spouses of forcibly sterilized individuals could be extended to those individual's children. We reasoned that a child's

> parents' deliberate flouting of state mandatory limits on procreation has put [the child] at risk. His mother's misfortune [in being forcibly sterilized] is deemed to be past persecution on account of political opinion; this is in turn imputed to [the child's] father as a matter of law, whether or not he ha[s] ever actually expressed such an opinion or [has] experienced such persecution directly. It is not clear that [the child] is any less "in association" with his mother in this respect than is his father; the doctrine of imputed political opinion may offer no crisp method for distinguishing them.

*Id.* at 1031. In *Lin*, however, we did not — and could not — finally decide the issue, because we were deciding an ineffective assistance of counsel claim and we were merely addressing whether the child-petitioner had a plausible claim for

relief. While our interpretation of the statute in *Lin* was plausible, we were not confronted with a contrary interpretation by the BIA. Today we are faced with such an interpretation, and, according appropriate *Chevron* deference to the BIA's interpretation of the statute, we affirm that interpretation as reasonable.

## B.    Individual Evidence of Past Persecution

**[6]** None of the above analysis affects the ability of a child to establish an asylum claim without resort to the automatic presumption we have just rejected. Any child who has experienced past persecution or has established a well-founded fear of future persecution on account of a protected ground is a refugee within the meaning of the INA, and thus is statutorily eligible for asylum. 8 U.S.C. § 1101(a)(42)(B); *see also* INS, *Guidelines for Children's Asylum Claims* (1998) ("INS Guidelines").

Ms. Zhang has suffered hardships as a result of her father's forced sterilization, including economic deprivation, the limitation of her educational opportunities, and the trauma of witnessing her father's forcible removal from her home. The questions we confront are whether she was subjected to those hardships on account of a protected ground, and whether they rise to the level of persecution. We review the IJ's and the BIA's decision that Ms. Zhang did not suffer past persecution under the deferential substantial evidence standard, *Elias-Zacarias*, 502 U.S. at 481.

**[7]** The hardships Ms. Zhang suffered were "on account of" a political opinion. The INA expressly defines "political opinion" to include resistance to coercive population control measures:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo

> such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion . . . .

8 U.S.C. § 1101(a)(42)(B). As we pointed out in *Lin*, the statute "does not say that 'failure' or 'refusal' or 'resistance' must have been [the petitioner's] own." 377 F.3d at 1031. In this case, it was Ms. Zhang's parents who resisted China's coercive population control program. Their resistance, however, is imputed to Ms. Zhang for the purposes of determining whether she has been persecuted on account of a protected ground. An asylum applicant is persecuted on the ground of an imputed political opinion when the applicant's association with others holding that opinion (including the applicant's family) is the motivation for the persecution. *E.g., Navas v. INS*, 217 F.3d 646, 661 (9th Cir. 2000) ("Typically, where killings and other acts of violence are inflicted on members of the same family by government forces, the inference that they are connected and politically motivated is an appropriate one." (citations and internal quotation marks omitted)); *C-Y-Z-*, 21 I. & N. Dec. at 922-23 (Rosenberg, J., concurring) ("An individual's . . . *association* with one who expressly resists or opposes such a program, may cause such a political opinion to be *imputed* to that individual." (emphasis added)). Here there is no doubt that the hardships Ms. Zhang suffered were on account of her parents' resistance to China's population control measures.

**[8]** We now turn to the question of whether the hardships Ms. Zhang suffered rise to the level of persecution. Persecution is "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.

1969). "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Gormley v. Ashcroft*, 364 F.3d 1172, 1176 (9th Cir. 2004) (citation and internal quotation marks omitted). However, "[t]he harm a child fears or has suffered . . . may be relatively less than that of an adult and still qualify as persecution," INS Guidelines at 19.

Ms. Zhang's counsel argued that she had suffered three forms of persecution: 1) economic deprivation; 2) denial of access to education; and 3) violence directed at her father in her presence. Since Ms. Zhang's inability to attend school was a consequence of her family's inability to pay the fine, we consider the first two theories of persecution together, as the IJ appears to have done. We conclude that the IJ lacked substantial evidence for concluding that the economic deprivation Ms. Zhang suffered (including her inability to pursue an education) did not constitute persecution.

Our case law clearly establishes that deliberate imposition of substantial economic disadvantage can amount to persecution. *See, e.g.*, *Baballah v. Ashcroft*, 367 F.3d 1067, 1075 (9th Cir. 2004) (Israeli Marines deliberately interfered with an Israeli Arab's fishing business, purposely destroyed his nets, subjected him to discriminatory enforcement, and destroyed his boat); *Gonzalez v. INS*, 82 F.3d 903, 910 (9th Cir. 1996) (woman opposed to Sandinista government in Nicaragua was subjected to threats and violence against her family as well as seizure of her family's land, denial of ration card, and consequent inability to supply her business). The test for whether economic deprivation amounts to persecution is not well-defined. In *Gormley* we explained that

> it is clear that an absolute inability to support oneself or one's family is not required to establish eligibility for asylum. It is equally well established, however, that mere economic disadvantage alone does not rise to the level of persecution. . . . Within the bounds of

this spectrum, we have advanced no definitive rule, and none exists, except that the deprivation claimed must be severe enough to constitute persecution.

364 F.3d at 1178 (internal citations omitted).

**[9]** Ms. Zhang testified that her parents's resistance to China's coercive population control program caused a number of adverse economic consequences. As a result of the forced sterilization, her father was unable to resume work. Some of the family's property was confiscated and the family was threatened with eviction. In addition, a substantial fine was imposed which the family was unable to pay. As a result of the family's inability to pay the fine, Ms. Zhang was barred from attending school. Denial of access to educational opportunities available to others on account of a protected ground can constitute persecution. In *Bucur v. INS*, 109 F.3d 399 (7th Cir. 1997), the Seventh Circuit noted that denial of access to education on the basis of one's ethnicity can amount to persecution. *Id*. at 403 ("If Romania denied its Ukranian citizens the right to higher education enjoyed by ethnic Romanians, this would be, we imagine, a form of persecution.").

**[10]** The IJ held that neither Ms. Zhang's economic deprivation nor her lack of access to education constituted persecution. The IJ explained his holding as follows:

The government will not preclude the respondent from pursuing a non-public education; in fact, would permit her continuing public education upon the payment of the 23,000 RMB fine. If the funds were available to pay for her to be smuggled out of China and into the United States, then surely, such funds were available to pay the actual fine leveled, and avoid continued penalties in that regard.

Neither of the factual assertions relied upon by the IJ is supported by substantial evidence. There is no evidence in the

record that the Chinese government would have allowed Ms. Zhang to pursue a non-public education, nor is there any evidence that such an education was reasonably available to her.

**[11]** More importantly, the IJ's conclusion that Ms. Zhang's family could have paid the fine since it arranged for her passage to the United States directly contradicts the evidence in the record. At Ms. Zhang's hearing, she testified that a relative paid for her to come to the United States. Her counsel specifically asked her why her relative could not pay the 23,000 RMB fine. Ms. Zhang answered as follows:

> If I can come to the United States, to continue my education, then I can earn money to repay my relative. If my relative have paid and post the fine of 23,000 Chinese monetary unit, then I would be unable to continue my education. I have to work to pay the imposed under the government. At the same time I have to work to repay to my relative.

We understand Ms. Zhang to have explained that her relative paid for her to come to the United States because she would be able to earn in the United States the money necessary to repay that relative. We also understand her to have explained that her relative would not (or could not) pay her family's fine because the family would not be able to repay the relative were Ms. Zhang to have remained in China. This testimony, which is the only relevant evidence in the record, directly contradicts the IJ's conclusion that "surely" the family could secure the funds to pay the fine to avoid the associated penalties.

We note that, although the government's attorney stated his idea of the "widely understood" range of the cost to smuggle someone from China to the United States, there is no evidence in the record regarding the actual cost of Ms. Zhang's passage to the United States. Thus, there is not substantial evidence to support the conclusion that the cost of her travel was equal to

or greater than the amount of the fine. But even if there were such evidence, this does not matter. As Ms. Zhang testified, her relative was unwilling to pay the fine but willing to pay for her to come to the United States because, once in the United States, she could work to pay off the debt.

**[12]** In holding that Ms. Zhang had not been persecuted, the IJ thus relied on two factual findings not supported by substantial evidence — that Ms. Zhang could attend a non-public school and that her family could have arranged payment of the fine had they wished to do so. Because the IJ erroneously relied on these findings, we cannot find that the IJ's holding that Ms. Zhang was not persecuted is supported by substantial evidence.

**[13]** We are not, on the record before us, compelled to reverse the IJ's holding at this time. That is, we do not hold, at this juncture, that Ms. Zhang qualifies for asylum. We do not know whether the IJ would have found that Ms. Zhang had been persecuted had he not erroneously relied on the assumptions that her family could pay the fine imposed and that she had access to non-public schooling. Under these circumstances, we remand so that the IJ may make a new determination of Ms. Zhang's eligibility for asylum. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (holding, in similar circumstances, that a court of appeals should remand to the agency for additional investigation or explanation). On remand, the IJ should reconsider whether the economic deprivation Ms. Zhang suffered on account of her parents' resistance to China's population control policies constitutes persecution. The IJ should consider the loss of property and income the family suffered, as well as the barrier the fine posed to Ms. Zhang's ability to pursue an education.

As for Ms. Zhang's father's forcible removal and sterilization, we note that "acts of violence committed against an applicant's friends or family can establish well-founded fear of persecution." *Nagoulko v. I.N.S.*, 333 F.3d 1012, 1017 (9th

Cir. 2003) (citing *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 2003)). The IJ dismissed Ms. Zhang's assertion that the violence against her father established a well-founded fear of persecution by saying that

> [t]he fact that [Ms. Zhang's] parents may have suffered persecution for their political opinion in this case, is not persecution of the respondent before the Court, nor has the Chinese government offered or threatened to harm the respondent on any such enumerated grounds.

While it is relevant, the lack of specific threats against Ms. Zhang does not constitute substantial evidence to support the conclusion that she does not have a well-founded fear. As *Nagoulko* makes clear, acts of violence against close associates can suffice to establish a well-founded fear of persecution.

Finally, we note that on remand the IJ should not consider the different forms of persecution that Ms. Zhang alleges in isolation. Rather, the IJ should consider the cumulative impact of all of the hardships to which Ms. Zhang has been subjected in determining whether she was persecuted, or whether she has a well-founded fear of persecution upon her return. *See Baballah*, 367 F.3d at 1076 ("An applicant may suffer persecution because of the cumulative impact of several incidents even where no single incident would constitute persecution on its own . . . . When analyzed in the aggregate, the physical assaults and economic harassment endured by Baballah compel a finding of persecution." (citations omitted)). Thus the IJ should consider whether the trauma Ms. Zhang suffered as a result of her father's forcible removal and sterilization, the economic deprivation she experienced, and her inability to pursue an education, when taken together, constituted persecution. The IJ must also consider whether these events establish a well-founded fear of persecution when considered alongside the punishment Ms. Zhang will likely face if

returned to China. *See* U.S. Department of State Country Reports on Human Rights Practices for 2000 (China) (released February 23, 2001), *available at* http:// www.state.gov/g/drl/rls/hrrpt/2000/eap/684.htm (stating that individuals returned to China "are generally fined anywhere between $600 and $6,000," and that "[m]any are also subjected to lengthy administrative detention or reeducation through labor camps.").

## C.   Withholding of Removal

**[14]** We affirm the BIA's holding that Ms. Zhang is not eligible for withholding of removal. Despite the factual errors which undermine the IJ's determinations regarding asylum, the record does not reveal a basis for withholding of removal. *See Al-Harbi v. INS*, 242 F.3d 882, 888-89 (9th Cir. 2001) (explaining that the standard for withholding of removal is "more stringent than the well-founded fear standard governing asylum") (internal quotations and citation omitted).

## III.   Conclusion

We hold that a child of a forcibly sterilized parent is not automatically eligible for asylum under 8 U.S.C. § 1101(a)(42)(B). However, we hold that, in this case, the IJ lacked substantial evidence for concluding that Ms. Zhang had not been persecuted on account of a protected ground, and that she did not have a well-founded fear of persecution upon return. We affirm the BIA's decision that Ms. Zhang is not eligible for withholding of removal. We grant the petition for review and remand for proceedings consistent with this opinion.

Petition for review GRANTED and case REMANDED.