FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 29 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RUI SHENG ZHU, Petitioner, v. ERIC H. HOLDER Jr., Attorney General, Respondent. | No. 07-70102 Agency No. A095-686-255 MEMORANDUM [*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 9, 2009
Submission Vacated October 14, 2009
Submitted November 30, 2009 [**]
Pasadena, California

Before: HALL and TALLMAN, Circuit Judges, and LAWSON, [***] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without additional oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

The parties are familiar with the facts of the case, so we do not repeat them here. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition for review.

The Board of Immigration Appeals ("BIA") treated Rui Sheng Zhu's testimony as credible but affirmed the finding that he failed to establish past persecution, and—despite his subjective fear of harm—that he had not established an objectively well-founded fear of future persecution. Likewise, the BIA held that he had failed to establish a claim for withholding of removal or protection under the United Nations Convention Against Torture ("CAT"). The petition must be denied if the BIA's determinations are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted). We think that standard is met here.

The dissent argues that, but for his family relationship, Zhu would not have been pursued by the Chinese government. Whether or not this is true, the BIA's finding that Zhu's family was subject to prosecution, rather than persecution, is supported by substantial evidence. *See Abedini v. INS*, 971 F.2d 188, 191 (9th Cir. 1992) (stating that prosecution under criminal laws of general applicability is not persecution unless the prosecution, as applied to the petitioner, is especially unconscionable or a mere pretext for persecution on account of a protected

2

ground); *Li v. INS*, 92 F.3d 985, 987 (9th Cir. 1996) ("Education, although undeniably important, is a matter of governmental policy rather than a fundamental right." (quoting *Faddoul v. INS*, 37 F.3d 185, 189 (5th Cir. 1994))).

Our personal disagreement with a foreign law that imputes a debt to an entire family cannot be sufficient to change prosecution into persecution. Furthermore, we cannot grant asylum to the members of all families who owe money to the Chinese government; owing a debt under the even-handed application of foreign law is not a protected ground. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i) and 1231(b)(3)(A); *see also Ochoa v. Gonzales*, 406 F.3d 1166, 1172 (9th Cir. 2005) (persecution as a result of a debt was not on account of a protected ground). Nor can we grant asylum because a person faces prosecution for illegal departure upon their return to their home nation. *Li*, 92 F.3d at 988.

Zhu has, therefore, failed to establish past persecution or a well-founded fear of future persecution on account of a protected ground, and his application for asylum and withholding of removal must be denied. 8 C.F.R. §§ 1208.13(b) and 1208.16(b). As to protection under CAT, Zhu has failed "to establish that it is more likely than not that he . . . would be tortured" if he is returned to China. *Id.* § 1208.16(c)(2).

**PETITION DENIED.**

Zhu v. Holder, No. 07-70102

**David M. Lawson, District Judge, dissenting**: Because in my view substantial evidence does not support the BIA's conclusion that the petitioner failed to demonstrate a well-founded fear of future persecution on account of membership in a particular social group (i.e., his family), I respectfully dissent from the majority's decision to deny the petition for review.

The BIA acknowledged that a family could constitute a social group within the meaning of 8 U.S.C. § 1101(a)(42), but it determined in this particular case that the family members were sought by the government primarily on account of their unpaid restitution debt, and not because of their membership in the family. However, that conclusion ignores the obvious point that but for the petitioner's membership in the family, the Chinese government could not use him as a tool to extract payment of the debt from his parents, and the methods used to coerce payment amount to persecution, as our precedents have defined it.

*Zhang v. Gonzales*, 408 F.3d 1239 (9th Cir. 2005), provides significant guidance. In that case, a forcibly sterilized father made arrangements to smuggle his minor daughter into the United States after the family could not afford to pay a 23,000 RMB fine. The fine was imposed under a law of general applicability that prohibited the family from birthing a third child. As a result of their inability to pay the fine, the

-1-

family suffered adverse economic consequences, including confiscation of family property, threatened eviction, and denial of educational opportunities to each of their children. In addition, as a result of forcible sterilization, the father could not return to his previous work. The IJ dismissed these consequences as insufficient to constitute "persecution," theorizing that the petitioner could have attended a public school instead, or that her family could have arranged for payment of the fine if they had wished to do so. This court disagreed and concluded that the IJ's findings were not supported by substantial evidence because the record did not show that (a) non-public education was available to the petitioner; and (b) a relative who paid for the petitioner to come to the United States would be willing to pay the family's fine, and the smuggling expenses he covered would have been sufficient to cover the fine. The court specifically stated that "the IJ lacked substantial evidence for concluding that the economic deprivation Ms. Zhang suffered (including her inability to pursue an education) did not constitute persecution." *Id*. at 1247. The same conclusion is warranted here.

In *Zhang*, this court stated certain principles of law that apply here as well: that "deliberate imposition of substantial economic disadvantage can amount to persecution," *ibid*. (citing *Baballah v. Ashcroft*, 367 F.3d 1067, 1075 (9th Cir. 2004), and *Gonzales v. INS*, 82 F.3d 903, 910 (9th Cir. 1996))); that "[d]enial of access to

educational opportunities available to others on account of a protected ground can [also] constitute persecution," *id*. at 1247-48 (citing *Bucur v. INS*, 109 F.3d 399 (7th Cir. 1997)); that "acts of violence against close associates [as opposed to the petitioner himself] can suffice to establish a well-founded fear of persecution," *id*. at 1249 (citing *Nagoulko v. INS*, 333 F.3d 1012, 1017 (9th Cir. 2003)); that individuals returned to China "are generally fined anywhere between $600 and $6,000 and . . . many are also subjected to lengthy administrative detention or reeducation through labor camps," *id*. at 1249-50 (citing U.S. Dep't of State Country Reports on Human Rights Practices for 2000 (China) (released Feb. 23, 2001) (quotations omitted; alterations in the original)); and that the BIA should "consider the cumulative impact of all of the hardships . . . [when considering] whether [a petitioner] has a well-founded fear of persecution upon return," *id*. at 1249.

I find striking similarities in this case. As in *Zhang*, Zhu was a victim of the authorities' attempts to collect a civil fine. Like Zhang's family, Zhu's family was economically ruined; in fact, the fine the Zhu family is facing is several times greater than the fine imposed on Zhang's family (23,000 RMB in *Zhang* versus 100,000-200,000 RMB in this case). The Zhus' property was confiscated; they could not find work; their house was given to the victim's family; and in addition to the fine, they incurred other debt much beyond their ability to repay. *See* Letter of Heng-Jian Zhu

and Mei-Ru Chen, AR 169, 178. The Zhu family attempted to plead for mercy, but the government would not relent. *See* AR 169. And like Zhang, Zhu was expelled from middle school.

It is true that Zhu did not directly witness violence against his family members. However, "persecution" is not limited to physical suffering; it may "come in the form of threats, harassment, or mental, emotional, and psychological harm." *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1159 (9th Cir. 2005) (citing *Knezevic v. Ashcroft*, 367 F3d 1206, 1211 (9th Cir. 2004)). The petitioner in *Zhang* did not face direct physical violence either.

In this case, *both* of Zhu's parents were arrested four or five times, with each detention lasting fifteen days. *Compare with Ndom v. Ashcroft*, 384 F.3d 743, 752 (9th Cir. 2004), *superseded by statute on other grounds*, Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, *as recognized in Parussimova v. Mukasey*, 533 F.3d 1128, 1133 (9th Cir. 2008) (holding that the petitioner's twenty-five-day detention, "including nineteen consecutive days," constituted persecution even in the absence of physical abuse). There is evidence from the petitioner that Zhu's father was beaten during one of the detentions. The BIA found the petitioner credible. Moreover, there are two outstanding arrest warrants against the petitioner himself, issued when the petitioner was just a 14-year-old boy. If the petitioner is deported, he probably will

-4-

be detained on these outstanding warrants and might face the additional consequence of the exit control laws described in *Zhang*. Although there is no evidence of continuing harm from the victim's family, the incident of the victim's family placing the victim's body at the front porch of the Zhus' house and destroying the house serves as evidence of past persecution, which is relevant to establishing the petitioner's reasonable fear of returning to China. AR 169 (Zhu's father's letter recounting the incident to Fuzhou City Mid Level People's Court and stating that the police merely asked the victim's family to bury the body or else be responsible for "fee of keeping the body in the crematory.").

I believe this evidence in the aggregate is sufficient to establish the petitioner's reasonable fear of persecution should he return to China. The persecution would result from the petitioner's membership in a family in which people other than himself were sought by the Chinese government to enforce laws of general applicability. In other words, it is not the petitioner's own conduct that would bring the government's wrath down upon him. Rather, it would be the happenstance of his family membership, and only that. *See Popova v. INS*, 273 F.3d 1251, 1257-58 (9th Cir. 2001) (stating that persecution is "'on account of' a statutorily protected status where an applicant holds such a status and her persecutors threatened [him or her] 'because of' it").

The BIA reasoned that the persecution visited upon the petitioner was not due to his membership in his family, but because his family could not pay the fine, and observed that if the fine were paid, the persecution would stop. From that observation, the BIA concluded that the petitioner's persecution was due to an unpaid debt and not because of his membership in his nuclear family. That discussion might be relevant if the debt were the petitioner's, or if there were some evidence that he could extinguish the debt himself. But there is no such evidence. The record establishes without contradiction that the family owes the debt, and the petitioner is subject to persecution solely because he is a member of that family. His membership in the family is something he cannot change; that characteristic is "immutable." *See Thomas v. Gonzales*, 409 F.3d 1177, 1187, 1189 (9th Cir. 2005) (en banc), *vacated on other grounds*, 547 U.S. 183 (2006) (holding that "a family may constitute a social group for the purposes of the refugee statutes," and a petitioner can establish persecution where he was "targeted on account of [his] shared, immutable characteristic, namely, [his] familial membership"); *Lin v. Ashcroft*, 377 F.3d 1014, 1028 (9th Cir. 2004) ("Like our sister circuits, we recognize that a family is a social group.") (citing *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1092 (9th Cir. 2000)).

The BIA's decision was predicated on the absence of evidence establishing the petitioner's well-founded fear of future persecution on account of membership in the

social group that consists of his family. Because, in my view, the record plainly shows otherwise, I would grant the petition for review.