DAVID M. LAWSON, District Judge,
dissenting:
Because in my view substantial evidence does not support the BIA’s conclusion that the petitioner failed to demonstrate a well-founded fear of future persecution on account of membership in a particular social group (i.e., his family), I respectfully dissent from the majority’s decision to deny the petition for review.
The BIA acknowledged that a family could constitute a social group within the meaning of 8 U.S.C. § 1101(a)(42), but it determined in this particular case that the family members were sought by the government primarily on account of their unpaid restitution debt, and not because of their membership in the family. However, that conclusion ignores the obvious point that but for the petitioner’s membership in the family, the Chinese government could not use him as a tool to extract payment of the debt from his parents, and the methods used to coerce payment amount to persecution, as our precedents have defined it.
Zhang v. Gonzales, 408 F.3d 1239 (9th Cir.2005), provides significant guidance. *601 In that case, a forcibly sterilized father made arrangements to smuggle his minor daughter into the United States after the family could not afford to pay a 23,000 RMB fíne. The fine was imposed under a law of general applicability that prohibited the family from birthing a third child. As a result of their inability to pay the fine, the family suffered adverse economic consequences, including confiscation of family property, threatened eviction, and denial of educational opportunities to each of their children. In addition, as a result of forcible sterilization, the father could not return to his previous work. The IJ dismissed these consequences as insufficient to constitute “persecution,” theorizing that the petitioner could have attended a public school instead, or that her family could have arranged for payment of the fine if they had wished to do so. This court disagreed and concluded that the IJ’s findings were not supported by substantial evidence because the record did not show that (a) non-public education was available to the petitioner; and (b) a relative who paid for the petitioner to come to the United States would be willing to pay the family’s fine, and the smuggling expenses he covered would have been sufficient to cover the fine. The court specifically stated that “the IJ lacked substantial evidence for concluding that the economic deprivation Ms. Zhang suffered (including her inability to pursue an education) did not constitute persecution.” Id. at 1247. The same conclusion is warranted here.
In Zhang, this court stated certain principles of law that apply here as well: that “deliberate imposition of substantial economic disadvantage can amount to persecution,” ibid, (citing Baballah v. Ashcroft, 367 F.3d 1067, 1075 (9th Cir.2004), and Gonzalez v. INS, 82 F.3d 903, 910 (9th Cir.1996)); that “[djenial of access to educational opportunities available to others on account of a protected ground can [also] constitute persecution,” id. at 1247-48 (citing Bucur v. INS, 109 F.3d 399 (7th Cir.1997)); that “acts of violence against close associates [as opposed to the petitioner himself] can suffice to establish a well-founded fear of persecution,” id. at 1249 (citing Nagoulko v. INS, 333 F.3d 1012, 1017 (9th Cir.2003)); that individuals returned to China “are generally fined anywhere between $600 and $6,000 and ... many are also subjected to lengthy administrative detention or reeducation through labor camps,” id. at 1249-50 (citing U.S. Dep’t of State Country Reports on Human Rights Practices for 2000 (China) (released Feb. 23, 2001) (quotations omitted; alterations in the original)); and that the BIA should “consider the cumulative impact of all of the hardships ... [when considering] whether [a petitioner] has a well-founded fear of persecution upon return,” id. at 1249.
I find striking similarities in this case. As in Zhang, Zhu was a victim of the authorities’ attempts to collect a civil fine. Like Zhang’s family, Zhu’s family was economically ruined; in fact, the fine the Zhu family is facing is several times greater than the fine imposed on Zhang’s family (23,000 RMB in Zhang versus 100,000-200,000 RMB in this case). The Zhus’ property was confiscated; they could not find work; their house was given to the victim’s family; and in addition to the fine, they incurred other debt much beyond their ability to repay. See Letter of Heng-Jian Zhu and Mei-Ru Chen, AR 169, 178. The Zhu family attempted to plead for mercy, but the government would not relent. See AR 169. And like Zhang, Zhu was expelled from middle school.
It is true that Zhu did not directly witness violence against his family members. However, “persecution” is not limited to physical suffering; it may “come in the form of threats, harassment, or mental, *602 emotional, and psychological harm.” See Nahrvani v. Gonzales, 399 F.3d 1148, 1159 (9th Cir.2005) (citing Knezevic v. Ashcroft, 367 F.3d 1206, 1211 (9th Cir.2004)). The petitioner in Zhang did not face direct physical violence either.
In this case, both of Zhu’s parents were arrested four or five times, with each detention lasting fifteen days. Compare with Ndom v. Ashcroft, 384 F.3d 743, 752 (9th Cir.2004), superseded by statu,te on other grounds, Real ID Act of 2005, Pub.L. No. 109-13,119 Stat. 231, as recognized in Parussimova v. Mukasey, 533 F.3d 1128, 1133 (9th Cir.2008) (holding that the petitioner’s twenty-five-day detention, “including nineteen consecutive days,” constituted persecution even in the absence of physical abuse). There is evidence from the petitioner that Zhu’s father was beaten during one of the detentions. The BIA found the petitioner credible. Moreover, there are two outstanding arrest warrants against the petitioner himself, issued when the petitioner was just a 14-year-old boy. If the petitioner is deported, he probably will be detained on these outstanding warrants and might face the additional consequence of the exit control laws described in Zhang. Although there is no evidence of continuing harm from the victim’s family, the incident of the victim’s family placing the victim’s body at the front porch of the Zhus’ house and destroying the house serves as evidence of past persecution, which is relevant to establishing the petitioner’s reasonable fear of returning to China. AR 169 (Zhu’s father’s letter recounting the incident to Fuzhou City Mid Level People’s Court and stating that the police merely asked the victim’s family to bury the body or else be responsible for “fee of keeping the body in the crematory”).
I believe this evidence in the aggregate is sufficient to establish the petitioner’s reasonable fear of persecution should he return to China. The persecution would result from the petitioner’s membei'ship in a family in which people other than himself were sought by the Chinese government to enforce laws of general applicability. In other words, it is not the petitioner’s own conduct that would bring the government’s wrath down upon him. Rather, it would be the happenstance of his family membership, and only that. See Popova v. INS, 273 F.3d 1251, 1257-58 (9th Cir.2001) (stating that persecution is “ ‘on account of statutorily protected status where an applicant holds such a status and her persecutors threatened [him or her] ‘because of it”).
The BIA reasoned that the persecution visited upon the petitioner was not due to his membership in his family, but because his family could not pay the fine, and observed that if the fine were paid, the persecution would stop. From that observation, the BIA concluded that the petitioner’s persecution was due to an unpaid debt and not because of his membership in his nuclear family. That discussion might be relevant if the debt were the petitioner’s, or if there were some evidence that he could extinguish the debt himself. But there is no such evidence. The record establishes without contradiction that the family owes the debt, and the petitioner is subject to persecution solely because he is a member of that family. His membership in the family is something he cannot change; that characteristic is “immutable.” See Thomas v. Gonzales, 409 F.3d 1177, 1187, 1189 (9th Cir.2005) (en banc), vacated on other grounds, 547 U.S. 183, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (holding that “a family may constitute a social group for the purposes of the refugee statutes,” and a petitioner can establish persecution where he was “targeted on account of [his] shared, immutable characteristic, namely, [his] familial membership”); Lin v. Ashcroft, 377 F.3d 1014, 1028 (9th Cir. *603 2004) (“Like our sister circuits, we recognize that a family is a social group.”) (citing Hernandez-Montiel v. INS, 225 F.3d 1084, 1092 (9th Cir.2000)).
The BIA’s decision was predicated on the absence of evidence establishing the petitioner’s well-founded fear of future persecution on account of membership in the social group that consists of his family. Because, in my view, the record plainly shows otherwise, I would grant the petition for review.