In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-3646

DRAGAN MILJKOVIC and DIVNA MILJKOVIC,

*Petitioners,*

*v.*

JOHN D. ASHCROFT,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
Nos. A 70 674 795, 796.

ARGUED JUNE 15, 2004—DECIDED JULY 22, 2004

Before POSNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Dragan Miljkovic asks us to reverse an order by the Board of Immigration Appeals denying him asylum and directing that he be deported to Yugoslavia (recently renamed "Serbia and Montenegro"). His wife's claim for asylum is derivative from his; see our earlier opinion, 366 F.3d 580 (7th Cir. 2004).

Miljkovic was born in Croatia, which at the time was part of Yugoslavia, and although both his parents were originally from Serbia and moved back to Serbia and he grew up

there, he claims without contradiction to be perceived by Serbians to be Croatian because he was born in Croatia and speaks Serbo-Croatian with a Croatian accent. As an adult in Serbia he participated in demonstrations against the Milosevic regime. In retaliation he was demoted by his employer, the national airline, and later was fired; his supervisor explained that the airline "would not feed Croats in the future." In June of 1991, Croatia seceded from Yugoslavia, precipitating a war between the two countries that raged throughout the year. In November, at the height of the war, Miljkovic received a draft notice. According to his uncontradicted testimony, draft notices were sent only to persons who were either opposed to the Milosevic regime or had been born in a part of Yugoslavia other than Serbia; Miljkovic satisfied both criteria. Upon receiving the notice he fled to the United States and applied for asylum. He presented evidence from a human-rights group and a qualified expert on Yugoslavia that the regime had made a practice of dealing with its opponents by sending them to fight against Croatia and that members of ethnic groups to which Serbia (the dominant entity in Yugoslavia) was hostile, which of course included Croatians, were targeted for hazardous military duties.

Regarding Miljkovic's claim that he fled to avoid persecution as a consequence of being drafted into the Yugoslav army, the immigration judge stated only that "persecution for failure to serve in the military may be established in those rare cases where a disproportionately severe punishment would result on account of one or more of the statutorily enumerated grounds or where the alien as a result of military service required by his government would necessarily be required to engage in inhuman conduct condemned by the international community as contrary to the basic rules of human conduct. There has, however, been no such showing in this record" (citation omitted). The Board of Immigration Appeals affirmed without opinion.

The immigration judge missed the boat. The issue was not whether Miljkovic would have been punished with disproportionate severity had he defied the draft notice and been arrested for evading military service. It was not whether he would have been required to engage in "inhuman conduct." The issue (and there is no contention that he failed to present it to the immigration judge and the Board of Immigration Appeals) was whether he had received a draft notice because he was deemed a Croatian and an opponent of Milosevic and whether if drafted he would have been assigned to hazardous military duties. The government argues that Miljkovic is complaining only about "discrimination," not persecution. Since the immigration judge did not mention the issue, central though it was to Miljkovic's claim of asylum, of whether picking on members of a hated minority to perform hazardous military duties is persecution, we could affirm on the basis of the government's argument only if the immigration judge would have committed an abuse of discretion had he found that, no, it was not merely discrimination; it was persecution. On the contrary, we held in *Begzatowski v. INS*, 278 F.3d 665, 670 (7th Cir. 2002), a case not cited by the government, that sending members of a hated ethnic minority into battle without ammunition was persecution. Cf. *Pelinkovic v. Ashcroft*, 366 F.3d 532, 537-38 (7th Cir. 2004); *Vujisic v. INS*, 224 F.3d 578, 581 (7th Cir. 2000), *Melkonian v. Ashcroft*, 320 F.3d 1061, 1068-69 (9th Cir. 2002). It was a different minority, Albanians, though the same persecutor, the Milosevic regime, and although the record is silent on whether the regime also sent Croations into battle without ammunition, it would hardly be surprising if it did; cannon fodder is cannon fodder, even when armed. In any event, picking on an ethnic minority for hazardous military duty goes well beyond mere "discrimination," even if they are given ammunition. There are plenty of hazardous military duties, such as disarming munitions, where having

a loaded gun does you no good at all. When discrimination reaches the level of physical violence or threats of violence, it becomes persecution. *Duarte de Guinac v. INS*, 179 F.3d 1156, 1161-62 (9th Cir. 1999).

Of course, since Miljkovic fled upon receiving the draft notice, he never did serve in the army and so was not exposed to the hazards of military duty. But as the government acknowledged at argument, a person can still be a victim of persecution even if he manages to elude his persecutors. A Jew who succeeded in escaping from Germany on the eve of being deported to an extermination camp would still have been counted as a victim of Nazi persecution. *Hengan v. INS*, 79 F.3d 60, 63 (7th Cir. 1996). Being driven out of one's country is another crossing of the line that separates mere discrimination from persecution.

The government argues that even if Miljkovic was a victim of persecution, since Milosevic is gone and Serbia is not at war with anyone, it is unlikely that Miljkovic will be persecuted if he is sent back. The argument may well be correct but it is made in the wrong forum. Once an applicant for asylum establishes that he has been a victim of persecution, the burden shifts to the government to convince the immigration judge that, nevertheless, because of changed country conditions the applicant has no well-founded fear of being persecuted should he return. *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004); *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). The immigration judge, because he ruled that Miljkovic had not been persecuted, did not reach the question whether Miljkovic had a well-founded fear of being persecuted if he is sent back to Serbia. In his opening brief in this court, Miljkovic contended that supporters of Milosevic are back in the saddle again. The government's only response is that Miljkovic could have presented evidence of changed country conditions to the

immigration judge. But quite apart from the fact that at the time of the alleged re-emergence of Serb nationalists in 2003 the immigration judge had already issued his decision denying asylum to Miljkovic, the burden was on the government, if Miljkovic succeeded in proving that he had been persecuted, to show that he wouldn't be persecuted if he were to be removed. There undoubtedly is residual Serbian hostility to Croatians, perhaps especially to Croatian "draft dodgers," and though our own research does not reveal any official retaliation against them, it is not an issue for us to decide. The evidence is not so clear cut that we could take judicial notice that Miljkovic will not be persecuted if he returns. Compare *Korniejew v. Ashcroft*, 371 F.3d 377, 387 n.10 (7th Cir. 2004). This is a matter for consideration on remand; and so in arguing that we should deny the petition for review on the basis of a ground not considered by the agency, the Department of Justice is once again violating the doctrine of *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943), which forbids the lawyers for an administrative agency to defend the agency's decision on a ground different from that stated or at least discernible in the decision itself. *Mengistu v. Ashcroft*, 355 F.3d 1044, 1046 (7th Cir. 2004).

The petition for review is granted, the order of removal vacated, and the case remanded to the Board of Immigration Appeals for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*