16-1268
*Lin v. Sessions*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand eighteen.

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge,*
AMALYA L. KEARSE,
ROSEMARY S. POOLER,
*Circuit Judges.*

———————————————————————

LIN MING FENG,
*Petitioner*,

v.                                                                          16-1268

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.

———————————————————————

FOR PETITIONER:            ADEDAYO O. IDOWU, New York, NY.

FOR RESPONDENT:            NEHAL H. KAMANI, Trial Attorney, Office of Immigration Litigation (Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Holly M. Smith, Senior Litigation Counsel, *on the brief*), Civil Division, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review of the Board of Immigration Appeals ("BIA") decision is **DENIED**.

Petitioner Lin Ming Feng ("Lin"), a native and citizen of the People's Republic of China, seeks review of an April 5, 2016 decision of the BIA affirming an October 8, 2014 decision of an Immigration Judge ("IJ") denying Lin's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lin Ming Feng*, No. A205 250 674 (B.I.A. Apr. 5, 2016), *aff'g* No. A205 250 674 (Immig. Ct. N.Y. City Oct. 8, 2014). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Because the BIA adopted the IJ's reasoning and offered additional commentary, "we review the decision of the IJ as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007). We review the BIA's "legal conclusions *de novo,* and its factual findings, including adverse credibility determinations, under the substantial evidence standard." *Shi Jie Ge v. Holder*, 588 F.3d 90, 93–94 (2d Cir. 2009) (citation omitted). Under the substantial evidence standard, the BIA's factual findings are treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). However, while the substantial evidence standard "is highly deferential, it does not admit misstatement of the facts in the record or bald speculation or caprice." *Huo Qiang Chen v. Holder*, 773 F.3d 396, 403 (2d Cir. 2014) (internal quotation marks and alteration omitted).

We turn first to Lin's asylum claim, which requires a showing that he is a "refugee"—that is, a person outside the country of his or her nationality who is "unable or unwilling to" return to that country "because of persecution, or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42). Here, Lin claims that he was arrested and beaten by Chinese authorities for practicing Christianity and fled to the United States because he feared ongoing persecution in China and wanted to be able to practice his Christian faith. The IJ concluded, and the BIA agreed, that Lin failed to carry his burden of proof because he was not credible and failed to adduce supporting evidence.

The BIA, drawing on the IJ's analysis, based its adverse credibility findings on three inconsistencies across Lin's credible fear interview, asylum application, and hearing testimony regarding (1) the circumstances of his arrest, (2) the nature of his treatment at the hands of Chinese authorities, and (3) his religious practices in the United States. Although we affirm the adverse credibility finding, the IJ and the BIA's analysis was not without error.

First, in identifying inconsistencies both the IJ and the BIA improperly relied on the notes from Lin's credible fear interview, emphasizing that they made no mention of details—such as the number of Christian churchgoers who were arrested alongside Lin—that were subsequently included in the asylum application and hearing testimony. This Court has observed that "credible fear interviews are not designed to elicit all the details of an alien's claim, but rather only to determine whether there is 'a significant possibility . . . that the alien could establish eligibility for asylum.'" *Zhang v. Holder*, 585 F.3d 715, 724 (2d Cir. 2009) (quoting 8 U.S.C. § 1225(b)(1)(B)(v)). Given the limited purpose of these interviews and their often rushed and tense conditions, the weight IJs and the BIA should ascribe to them depends on how reliable they seem. In *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004), we articulated four non-exhaustive factors to consider in making this reliability determination: (1) whether the record of the interview is a transcript or merely a summary; (2) whether the questions were designed to "elicit the details of an asylum claim;" (3) whether the alien appears to have been "reluctant to

3

reveal information to [immigration] officials because of prior interrogation sessions or other coercive experiences in his or her home country;" and (4) whether the alien's statements suggest that he or she did "not understand English or the translations provided by the interpreter." 357 F.3d at 180; *Zhang*, 585 F.3d at 724.

The first three factors call into question the reliability of the recorded statements. First, there is no transcript of the interview but merely shorthand notes that the IJ characterized as "somewhat sketchy." R. at 66. This raises questions about whether Lin's statements were fully and accurately memorialized. Second, although the officer asked follow-up questions, none of these questions sought to elicit the details the IJ and the BIA later emphasized, such as how many churchgoers were arrested. Third, assuming the truth of Lin's representation that he was beaten during an interview with Chinese authorities, it is plausible, if not likely, that he was nervous and reserved during his credible fear interview. In light of these limitations, the IJ and BIA gave undue weight to the credible fear interview by relying on the omission of minor factual details.

Second, the IJ and BIA held Lin to an unreasonably stringent standard in finding that his accounts of his treatment at the hands of Chinese authorities were inconsistent. Drawing on the IJ's reasoning, the BIA compared Lin's credible fear interview, where he claimed that he was slapped a few times and his face swelled; his application, where he claimed that he was slapped a few times and his mouth bled and his face swelled; and his testimony, where he claimed that he was slapped four times, handcuffed, and beaten. But these statements are not inconsistent. Although the asylum application mentions bleeding, a detail not included in the credible fear interview notes, this additional fact does not rise to the level of an inconsistency, particularly given the limitations of the credible fear interview. Similarly, when viewed in context, Lin's testimony was consistent with his application. Lin's application said that when the police interrogated him they "slapped

4

[him] harshly until [his] mouth was bleeding" and his face became "swollen." R. at 176. At the hearing, the interrogation was discussed in greater detail. Lin's attorney asked how the police responded when Lin told them he attended the church gathering to worship, not for political activity. Lin replied, "They did not believe me and they beat me." R. at 100. When asked how long the beating lasted, Lin replied, "They slapped me four times on my face." R. at 100-01. Counsel then asked, "Apart from slapping you, did they do anything else?" and Lin replied, "They handcuffed me and they beat me." R. at 101. The IJ and BIA chose to understand this as testimony that Lin was *first* slapped, *then* handcuffed, and *then* the beating continued. But, even if we accept this interpretation, the added fact that Lin's beating continued after he was handcuffed cannot be characterized as an inconsistency. If anything, the IJ has identified a descriptive detail that was omitted from Lin's asylum application, but the "the impact of omissions must be measured against the whole record before they may justify an adverse credibility determination." *Secaida-Rosales v. I.N.S.*, 331 F.3d 297, 308 (2d Cir. 2003), *superseded by statute on other grounds as recognized in Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008) (per curiam). In isolation, this omission indicates nothing more than that narratives vary subtly across retellings.

Notwithstanding these errors, there were other bases for the IJ and BIA's adverse credibility finding. For example, Lin's accounts of his arrest varied. He testified that he was worshipping with eight people, but only he and two others were arrested. By contrast, his application stated that everyone was arrested. When pressed about this inconsistency, Lin confirmed that only three people were arrested but was unable to explain his earlier statement, offering only that he "[did]n't remember clearly." R. at 136. The Board declined to credit this explanation. Although such skepticism is by no means necessary, on appeal Lin "must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must

5

demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks and citations omitted). He has failed to make this showing.

Unable to carry his burden based on his own testimony, Lin also failed to present corroborating evidence. The Board emphasized that the record did not contain reasonably available forms of corroboration, such as a letter from Lin's parents—which might have corroborated his claim that Chinese police came to check up on him following his arrest—or the pastor—which might have corroborated the details of the police raid or Lin's religious practices—or any documentary evidence supporting Lin's claim that he attended church in the United States. We have recognized that an IJ may require that an applicant's testimony be corroborated when one would reasonably suspect such evidence to be available at the time of the immigration hearings, and Lin has failed to demonstrate that the evidence requested was not reasonably available to him. *Liu v. Holder*, 575 F.3d 193, 197–98 (2d Cir. 2009). The adverse credibility finding in conjunction with the absence of corroborating evidence is dispositive of Lin's asylum claim.

Lin's arguments regarding withholding of removal and CAT protection have both been forfeited, the former because it was not properly developed, *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001), and the latter because it was not raised before the BIA, *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 121–22 (2d Cir. 2007).

For the foregoing reasons, the petition for review is **DENIED**. As we have completed our review, the stay of removal that the Court previously granted in this petition is **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6