17-3116
*Qosaj v. Barr*

BIA
Bukszpan, IJ
A206 140 333, 334

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand nineteen.

PRESENT:
　　　　　ROBERT A. KATZMANN,
　　　　　　　*Chief Judge*,
　　　　　RICHARD C. WESLEY,
　　　　　JOSEPH F. BIANCO,
　　　　　　　*Circuit Judges*.

_____

ANXHELA QOSAJ, ENRIK QOSAJ,

　　　　*Petitioners*,

　　　　v.　　　　　　　　　　　　　　　　No. 17-3116 (NAC)

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,

　　　　*Respondent*.

_____

FOR PETITIONER:　　　　　Michael P. DiRaimondo (Marialaina L. Masi and Stacy A. Huber *on the brief*), Melville, NY.

FOR RESPONDENT:                    Nehal Kamani, Aric A. Anderson, Trial Attorneys, Kohsei Ugumori, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review of a Board of Immigration Appeals ("BIA") decision is **GRANTED**, the decision of the BIA is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this order.

Petitioners Anxhela and Enrik Qosaj seek review of a BIA decision affirming an Immigration Judge's ("IJ") denial of Anxhela's application for asylum. Because we conclude that the agency's decision is unsupported by substantial evidence, we grant the petition, vacate the BIA decision, and remand for further consideration. We assume the parties' familiarity with the underlying facts and procedural history of the case.

Anxhela Qosaj and her son Enrik are natives of Albania. They entered the United States without inspection on or about June 30, 2013, were served Notices to Appear on July 1, 2013, and thereafter conceded removability. Anxhela applied for asylum, withholding of removal under the Immigrant and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). Her case was consolidated with Enrik's, a derivative beneficiary of Anxhela's application under 8 U.S.C. § 1158(b)(3).

A hearing was held before an immigration judge on November 28, 2016, at which Anxhela testified. The IJ found her testimony credible, and the facts are largely uncontested.

Anxhela is married to Nikolle Qosaj, who is also Enrik's father. Nikolle has been a member of the Democratic Party of Albania since 1991, and Anxhela joined in 1994. Anxhela and Nikolle bought a restaurant in 2002, which they used as a meeting place for the local

Democratic Party. In 2005, Paulin Sterkaj—a Socialist candidate for Parliament and ex-member of the secret police—wanted to use the restaurant for campaign purposes, but Nikolle did not let him. That night, after everyone left, someone shot at the restaurant. Nikolle reported the incident to the police, but Anxhela does not think they did anything in response. After Sterkaj won the election, police frequently came to the restaurant to harass the Qosaj family. This police harassment continued almost weekly until Anxhela left in 2013.

Nikolle became the chairman of the local branch of the Democratic Party in 2009, at which point he started receiving threatening phone calls from Socialists, who told him that his family would not be safe if he did not resign. Nikolle also continued to campaign against Sterkaj before the 2009 elections. In May of that year, police came to the restaurant and arrested Nikolle on the pretense that he had sold alcohol to minors. The police detained him overnight, pressuring him to support Sterkaj and beating him when he refused. The police also threatened to kidnap Anxhela and sell her into prostitution in Italy. Sterkaj won that election.

In 2011, Nikolle was elected to local office as a Democrat. On May 16, 2011, the police came to the Qosaj home and arrested Nikolle, pushing Anxhela to the ground in the process. They detained Nikolle for two days, during which time they beat him, pressured him to resign, and threatened Enrik. The family continued to receive threatening phone calls after he was released, and the police continued to come to the restaurant every week to harass them. Fearing for their safety, Anxhela and Enrik fled the country in December 2012, intending to reach the United States, but were stopped in Germany and sent back to Albania.

Before the 2013 elections, a Socialist Party official came to the restaurant when Nikolle was not there and told Anxhela he would burn the restaurant down and kill Enrik if the family did not close it and resign from the Democratic Party. In June of that year, the police came to

3

their home, claiming to be searching for weapons, and pushed Anxhela to the ground when she tried to stop them from breaking a statue of the Virgin Mary. They then arrested Nikolle and detained him for two nights, beating him and again threatening Enrik. Nikolle again told Anxhela and Enrik to leave Albania, which they did on June 22, 2013, the day before the 2013 parliamentary elections. The Socialists won the 2013 election, and a few days later there were shots fired at the restaurant.

The Socialists also won the 2015 elections, and Nikolle was physically beaten by Socialist Party members after the elections were held but before the ballots were counted. As of the November 28, 2016 hearing, Nikolle remained the chairman of the local Democratic Party and continued to receive phone calls, and Sterkaj remained in power. Nikolle and their daughter were still in Albania so Nikolle could care for his ailing mother, and because he felt that he owed it to his Democratic Party colleagues to remain.

The agency denied Anxhela's application for asylum, withholding of removal under the INA, and protection under the CAT. The agency found that Anxhela testified credibly and demonstrated a subjective fear of returning to Albania. But the agency concluded that Anxhela's fear of future persecution was not objectively reasonable because, while the police may have persecuted her husband, they never seriously harmed Anxhela herself, despite having the opportunity to do so.[1]  And because Anxhela's asylum claim failed, the agency concluded that Anxhela also failed to meet the more stringent standards associated with her withholding of removal and CAT claims. This timely petition followed.

---

[1] The agency also concluded that Anxhela's past treatment did not rise to the level of persecution, a decision which the petitioners have also appealed.

To qualify for asylum, Anxhela must demonstrate that she is a "refugee" under 8 U.S.C. § 1158(b)(1), meaning she is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution due to her race, religion, nationality, membership in a particular social group, or political opinion. *See id.* § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b). A well-founded fear of future persecution must be both subjectively genuine and objectively reasonable. *See Huo Qiang Chen v. Holder*, 773 F.3d 396, 404 (2d Cir. 2014).[2]

The agency's finding of the likelihood that a future event will occur—here, that Anxhela will be persecuted if she returns to Albania—is a finding of fact reviewed for substantial evidence under the clearly erroneous standard. *See Hui Lin Huang v. Holder*, 677 F.3d 130, 134-35 (2d Cir. 2012); *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (B.I.A. 2015). Under the substantial evidence standard, the agency's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). However, "whether a given likelihood of persecution satisfies the requirements for asylum or withholding of removal is a question of law" that we review de novo. *Huo Qiang Chen*, 773 F.3d at 403; *see also Matter of Z-Z-O-*, 26 I. & N. Dec. at 590-91.

The agency held that Anxhela's fears are unreasonable because the police and Socialist leaders have had opportunities to fulfill their threats but have not yet done so. "This standard is too exacting." *Flores Anyosa v. Whitaker*, 758 F. App'x 88, 91 (2d Cir. 2018) (summary order) (rejecting the agency's conclusion that an applicant's fear was unreasonable just because a gang that threatened him "failed to carry out their threats while he hid in his home for several weeks"). An individual can have an "objectively well-founded fear of persecution even if it is improbable

---

[2] Unless otherwise indicated, in quoting cases, we omit all internal citations, quotation marks, footnotes, and alterations.

that he will be persecuted upon his return to his own country." *Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 69 (2d Cir. 2002). There need only be "a slight, though discernible, chance of persecution." *Tambadou v. Gonzales*, 446 F.3d 298, 302 (2d Cir. 2006). The question is whether "a reasonable person in the same circumstances would have such a fear." *Carranza-Hernandez v. I.N.S.*, 12 F.3d 4, 7 (2d Cir. 1993); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

Anxhela is afraid to return home to a restaurant that was twice "sprayed with bullets," App. at 327, 331, including just a few days after she fled the country. To return home to a local political leader who, just before she fled, threatened to burn down her restaurant and kill her son. To return to where police have kidnapped and beat her husband, threatened to sell her into sexual slavery in a foreign country, and twice invaded her home and knocked her to the ground, most recently in the weeks before she fled. The local Socialist politicians and police have repeatedly demonstrated their willingness to violently persecute their political opponents, including Anxhela's husband, and they have threatened Anxhela with such persecution. Any reasonable person so situated would fear that her luck will change.

The Government briefly contends that the local Socialist Party is no longer interested in persecuting Nikolle or his family, rendering Anxhela's fear unreasonable. Anxhela testified that, since the 2015 elections when Nikolle was beaten, her husband has only received phone calls. But Anxhela and her husband were victims of cyclical abuse that coincided with biennial elections. It is therefore unsurprising that he did not suffer severe persecution between the 2015 elections and the November 2016 hearing. And, taking Anxhela's testimony as credible, as the IJ did, the fact that Nikolle decided to stay in Albania despite his treatment is explained by his

6

"fortitude in the face of danger," not his "absence of fear." *Singh v. Moschorak*, 53 F.3d 1031, 1034 (9th Cir. 1995).

We therefore hold that no reasonable factfinder could conclude that Anxhela's credible testimony did not show at least a "discernible[] chance of persecution," *Tambadou*, 446 F.3d at 302, and that, as a matter of law, this risk suffices to render her subjective fear objectively reasonable.[3] Accordingly, we vacate the agency's denial of Anxhela's asylum application. And because the agency denied Anxhela's application for withholding of removal and CAT relief only as an *a fortiori* conclusion given its denial of Anxhela's asylum application, we vacate those denials as well.

For the foregoing reasons, the petition for review is **GRANTED**, the decision of the BIA is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this decision.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

---

[3] Given this conclusion, we decline to decide whether the agency also erred in finding that Anxhela did not suffer past persecution.

7